**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1401**

MCIMETRO ACCESS TRANSMISSION SERVICES OF VIRGINIA,
INCORPORATED, d/b/a Verizon Access Transmission Services of
Virginia,

Plaintiff - Appellant,

v.

MARK C. CHRISTIE, in his official capacity as Chairman of
the State Corporation Commission of Virginia; THEODORE V.
MORRISON, JR., in his official capacity as Commissioner of
the State Corporation Commission of Virginia; JUDITH
WILLIAMS JAGDMANN, in her official capacity as Commissioner
of the State Corporation Commission of Virginia,

Defendants - Appellees,

and

XO COMMUNICATION SERVICES, INCORPORATED; CAVALIER TELEPHONE,
LLC; DIECA COMMUNICATIONS, INCORPORATED, d/b/a Covad
Communications Company,

Intervenors/Defendants – Appellees,

and

STATE CORPORATION COMMISSION OF VIRGINIA,

Defendant.

----------------------------------------

UNITED STATES OF AMERICA; FEDERAL COMMUNICATIONS COMMISSION,

Amici Curiae.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (3:06-cv-00740-JRS)

---

Argued: December 5, 2008          Decided: February 11, 2009

---

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

---

Dismissed, vacated, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Scott H. Angstreich, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellant. Robert A. Dybing, THOMPSON & MCMULLAN, Richmond, Virginia, for Appellees. **ON BRIEF:** Michael E. Glover, Michael D. Lowe, VERIZON, Arlington, Virginia; Lydia R. Pulley, VERIZON, Richmond, Virginia; Gregory G. Rapawy, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C.; Robert M. Tyler, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellant. John F. Dudley, William H. Chambliss, STATE CORPORATION COMMISSION OF VIRGINIA, Richmond, Virginia, for Appellees. Matthew B. Berry, General Counsel, Joseph R. Palmore, Deputy General Counsel, Richard K. Welch, Acting Deputy Associate General Counsel, Christopher L. Killion, Deputy Associate General Counsel, Nicholas A. Degani, Counsel, FEDERAL COMMUNICATIONS COMMISSION, Washington, D.C.; Thomas O. Barnett, Assistant Attorney General, James J. O'Connell, Jr., Deputy Assistant Attorney General, Catherine G. O'Sullivan, Attorney, Nancy C. Garrison, Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amici Curiae.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Verizon Access appeals the district court's dismissal of its challenge to conditions placed on its interstate communications services by the Virginia State Corporation Commission ("VSCC"). The VSSC moved this court to dismiss the appeal as moot because of its subsequent rescission of the contested conditions and its explicit recognition of exclusive FCC jurisdiction over the interstate communications services at issue. For the reasons that follow, we agree that the appeal is moot and dismiss on that basis.

I.

"Verizon Access," the plaintiff here, is the result of the 2005 merger of the Virginia subsidiaries of telecommunications companies MCI and Verizon Communications. The merger of MCI into Verizon required the approval of federal and state regulatory agencies, including the Federal Communications Commission ("FCC") and the VSCC, both of which imposed certain conditions. The FCC, pursuant to its authority over regulation of interstate communications services under the Communications Act, 47 U.S.C. § 151, issued an order ("FCC Order") requiring that, for a period of 30 months following the merger date, Verizon/MCI "shall not increase the rates paid by MCI's existing customers." JA 91. The FCC also stated that its conditions were

3

not intended "to restrict, supersede, or otherwise alter state or local jurisdiction under the Communications Act." JA 90.

The VSCC considered and ultimately approved the merger pursuant to its authority under the Transfers Act, Va. Code § 56-88.[1] However, its order required that Verizon Access "continue to offer to [current and future] wholesale customers in Virginia its available intrastate *and* interstate special access private line or its equivalent [which provide dedicated bandwidth for a customer's usage] . . . at pre-merger terms and conditions and at prices that do not exceed pre-merger rates." VSCC Order I; JA 58. Unlike the FCC's rate constraints, which were to continue for 30 months, the VSCC's condition was to remain in effect indefinitely, until the VSCC lifted it. JA 52-53, 58.

In April 2006, Verizon Access petitioned the VSCC to remove the restriction, arguing that regulation of interstate

---

[1]The Transfers Act requires VSCC approval of any transaction that involves the acquisition or disposal of control of a telephone company in Virginia. The Act provides that the VSCC must issue conditions "as it may deem proper and the circumstances require" in order to ensure that the proposed combination will neither impair nor jeopardize "adequate service to the public at just and reasonable rates." Va. Code § 56-90. The Act defines "control" as "(1) the acquisition of twenty-five percent or more of the voting stock or (ii) the actual exercise of any substantial influence over the policies and actions of any . . . telephone company." Va. Code § 56-88.1.

communications services falls exclusively under federal jurisdiction. In July 2006, the VSCC denied the petition.

These arguments were then repeated in federal district court, with Verizon Access asserting, and the VSCC resisting, federal preemption. In March 2007, the district court found that the VSCC's authority was not preempted and granted its motion to dismiss. This appeal followed.

In January 2008, this court requested that the federal government file an amicus brief setting forth its view on whether the challenged conditions on the merger are preempted by federal law. In February 2008, the FCC and the Department of Justice ("DOJ") filed their joint amicus brief ("FCC/DOJ Brief") supporting Verizon Access's preemption argument. The government offered extensive statutory, regulatory and judicial authority[2]

---

[2]For instance, the government pointed out that the provisions of the Communications Act, which created the FCC and granted it oversight authority, "apply to *all* interstate and foreign communication by wire." 47 U.S.C. § 152(a) (emphasis added). The government also presented several FCC orders supporting its preemption argument. See, e.g., In re Vonage Holdings Corp., 19 FCC Rcd. 22404, 22412, para. 16 (2004) (stating that the FCC has "exclusive jurisdiction over all interstate and foreign communication") (quotation and citation omitted); Mobile Telecomm. Techs. Corp., 6 FCC Rcd. 1938, 1941 n.6 (1991) ("The [Communications] Act grants this Commission exclusive authority to regulate the charges and services of interstate common carriers."). Finally, the government cited extensive judicial precedent on point. See, e.g., Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 127 S.
(Continued)

in support of its argument that "the general rule that the FCC has exclusive jurisdiction over interstate communications services applies" here. FCC/DOJ Br. at 12. Specifically, the brief asserted that the Communications Act generally grants the FCC exclusive authority to regulate the rates, terms, and conditions on interstate communications services. The federal government concluded that in light of the FCC's exclusive jurisdiction, the VSCC lacked jurisdiction to regulate Verizon Access's interstate communications services.[3] Id. at 7; 14.

On May 30, 2008, the VSCC issued a superseding order accepting the federal government's position regarding the exclusivity of the FCC's regulatory jurisdiction in this context

_____

Ct. 1513, 1516–17 (2007) (noting that the Communications Act sets up a "traditional regulatory system" in which the FCC was "granted broad authority to regulate interstate telephone communications," including the authority to "determine a rate's reasonableness."); Crockett Tel. Co. v. FCC, 963 F.2d 1564, 1566 (D.C. Cir. 1992) ("The FCC has exclusive jurisdiction to regulate interstate common carrier services including the setting of rates.").

[3]In order to clarify its jurisdiction, the FCC has drawn a bright line to distinguish interstate communications (over which it has jurisdiction) and intrastate communication (over which the states retain jurisdiction). Communications services are classified as "interstate" for rate regulation and other purposes "if the interstate traffic on the line involved constitutes more than ten percent of the total traffic on the line." 47 C.F.R. § 36.154(a).

6

and rescinding the contested conditions.  See VSCC Order, Case No PUC-2008-00023 (May 30, 2008) ("VSCC Order II").  VSCC Order II stated, in part:

> On February 19, 2008, . . . the [DOJ] and the FCC filed an amicus curiae brief . . .  Therein, the DOJ and FCC declared the . . . requirements on interstate rates, terms, and conditions contained in [VSCC Order I] is preempted by federal regulation.  *Upon consideration of the foregoing*, it is hereby ordered that . . . [t]he condition . . . from [VSCC Order I] is rescinded insofar as it applies to interstate special, private line or its equivalent, and high capacity loop and transport facilities.

VSCC Order II at 2 (emphasis added; original emphases deleted).

On June 9, 2008, the VSCC moved this court to dismiss Verizon Access's appeal for mootness.  Motion to Dismiss (June 9, 2008) ("VSCC Motion").  The VSCC Motion reaffirmed the VSCC's recognition of the FCC's exclusive authority to regulate the interstate communications services at issue here, stating that "the [VSCC] expressly recognized the scope of that federal preemption in its May 30, 2008 Order [i.e., VSCC Order II]." VSCC Motion at 5.

We deferred ruling on this motion until after oral argument.  At oral argument, the VSCC again reiterated its recognition and acceptance of the FCC's exclusive authority to regulate the interstate communications services at issue here. The VSCC stated that it did not object to this court basing a finding of mootness, in part, on the VSCC's recognition of FCC

7

preemption; that the government's analysis was correct; and that the FCC had spoken with authority.

We turn now to the VSCC's mootness argument

## II.

A case is not necessarily mooted by a defendant's voluntary cessation of allegedly offensive conduct. As the Supreme Court has held, "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc. 528 U.S. 167, 189 (2000) (quotation and citation omitted). The Court explained that if such voluntary cessation resulted in deprivation of jurisdiction to hear the case, "the courts would be compelled to leave the defendant free to return to his old ways." Id. (punctuation and citation omitted). To prevent a party from evading judgment by stopping and restarting challenged conduct, the Court narrowly defined conduct in which mootness following voluntary cessation might be appropriate: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quotation and citation omitted). Explaining this "stringent" principle, the Court held that the party asserting mootness bears the "heavy burden of persuading

8

the court that the challenged conduct cannot reasonably be expected to start up again." Id. (quotation and citation omitted).

Here, the VSCC voluntarily rescinded its conditions that affected Verizon Access's interstate communications services. Standing alone, this rescission would be insufficient for the VSCC to meet its "heavy burden" of persuading this court that one could not reasonably expect that it would attempt to regulate Verizon Access's interstate communications services in the future. However, the VSCC also offers its explicit endorsement of the FCC's position (and so, the plaintiff's identical position) on preemption.[4] VSCC Motion at 5. Given our general reluctance to assume that a state agency such as the VSCC would not comply with a properly recognized law,[5] we agree that the VSCC has met its heavy burden. Consequently, we find there is no reasonable likelihood that the VSCC would seek to

---

[4]As the VSSC states, "[h]aving . . . acknowledged federal preemption over the challenged conditions, it is, at the very least, extremely unlikely that the Commissioners would flout that statement of preemption . . . ." VSCC Motion at 5.

[5]See, e.g., Blackwell v. Thomas, 476 F.2d 443, 445-46 (4th Cir. 1973) (holding that this court cannot hypothesize that a state jury commission would not comply with the law).

9

regulate interstate communications services in this manner in the future.

### III.

Because the VSCC rescinded the contested conditions and explicitly recognized the FCC's exclusive authority to regulate the interstate communications services at issue, we conclude that the complained of activity is unlikely to recur and the appeal is moot. Therefore, in accordance with established practice,[6] we vacate the judgment below and remand with a direction to dismiss.

DISMISSED, VACATED, AND REMANDED

---

[6]See Arizonans for Official English v. Arizona, 520 U.S. 43, 71 (1997); United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950).